IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3267-FL

| | | |
|---|---|---|
| GEORGE R. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANS MILLER, DETENTION | ) | ORDER |
| OFFICER MOORE, LT. | ) | |
| MARSHBURN, SGT. | ) | |
| CRUTCHFIELD, DETENTION | ) | |
| OFFICER McMULLEN, and OFFICER | ) | |
| CAVANAUGH, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions for summary judgment (DE 45, 65), filed pursuant to Federal Rule of Civil Procedure 56. The motions were fully briefed and thus the issues raised are ripe for decision. For the reasons stated below, the motions are granted and plaintiff's claims are dismissed.

## STATEMENT OF THE CASE

On August 17, 2016, plaintiff, a state pretrial detainee proceeding pro se, filed this civil rights action in state court, alleging among other things that the Onslow County Detention Center's policy limiting the number of publications he can have in his possession at the detention center is unconstitutional. Plaintiff's original complaint named as defendants Hans Miller (the Sheriff of Onslow County, N.C.), Detention Officer Moore, and Onslow County, N.C. On October 11, 2016, defendants removed the action to this court. On October 12, 2016, formerly-named defendant Onslow County, N.C., filed motion to dismiss for failure to state a claim, which the court

subsequently granted. On May 17, 2017, plaintiff filed a document captioned "motion to alter judgment" which contained an amended complaint plaintiff had attempted to file in the state court action. The court construed the motion to alter judgment as a motion to amend the complaint in the instant matter, and granted the motion to amend. The amended complaint named Lieutenant Marshburn, Sergeant Crutchfield, Detention Officer McMullen, and Officer Cavanaugh as additional defendants in this matter.

On November 22, 2017 (after close of discovery), defendants Miller and Moore filed the instant motion for summary judgment, arguing that they are entitled to qualified immunity on plaintiff's claims and that the undisputed record evidence establishes plaintiff's claims fail as a matter of law. In support of the motion, defendants Miller and Moore filed statement of material facts and appendix. The appendix included personal affidavits of defendants Miller and Moore. Plaintiff responded to defendant Miller and Moore's motion, and also filed a personal declaration in opposition to the motion for summary judgment. Defendants Miller and Moore filed reply to plaintiff's response, and plaintiff thereafter filed unauthorized surreply.[1]

After service of the amended complaint, Defendants Cavanaugh, Crutchfield, Marshburn, and McMullen filed the instant motion for summary judgment, relying principally on the same arguments advanced by defendants Miller and Moore. In support of the motion, defendants Cavanaugh, Crutchfield, Marshburn, and McMullen filed statement of material facts and appendix. The appendix included personal affidavits from each of the moving defendants. Plaintiff responded to the motion, and also filed a personal declaration in opposition to the motion for summary judgment. Defendants Cavanaugh, Crutchfield, Marshburn, and McMullen filed reply, and plaintiff

---

[1] In light of plaintiff's pro se status, the court has reviewed and considered plaintiff's unauthorized surreplies in resolving the instant motions.

again filed an unauthorized surreply.

## STATEMENT OF THE FACTS

In the light most favorable to plaintiff, the facts relevant to the instant motions are as follows. During the relevant time frame, plaintiff was a pretrial detainee at the Onslow County Detention Center in Jacksonville, North Carolina. Defendant Miller is the Sheriff of Onslow County and the remaining defendants are detention center staff. The Onslow County Detention Center maintains an official policy that limits the number of publications a pretrial detainee may keep in his possession ("publications policy"). (Miller Aff. (DE 47-1) ¶ 6 & Ex. A). Pretrial detainees may only possess four publications at one time, two in the detainee's cell and two in a personal property storage bin. (Id.) Detainees can exchange publications in their cells with publications in the storage bins by submitting requests to detention center staff, and can obtain new publications by discarding old ones. (Id.) The policy is content neutral, meaning the number of publications allowed in the cell and storage bin is not dependent on the content of the publications, or their status as books, periodicals, or newspapers.[2] (Id.) Additionally, personal letters, postcards, and similar correspondence are not subject to the publications policy. (Id.) The policy was implemented to comply with fire safety standards, to prevent detainees from concealing contraband in publications, to limit pest control issues, and to otherwise maintain clean and orderly detention center conditions. (Id.)

On August 5, 2016, defendant Moore informed plaintiff that Moore had two newspapers to deliver to plaintiff's cell. (Compl. (DE 1-3) at 3). Plaintiff then attempted to trade defendant Moore two old newspapers for two new newspapers, but defendant Moore only gave plaintiff one of the two

---

[2]The policy does contain some content-based restrictions on certain publications, but those provisions are not challenged in this lawsuit.

new newspapers. (Id. at 3-4). Defendant Moore then informed plaintiff that the publications policy provided that a detainee may only possess two publications in his cell at one time. (Id.) Because plaintiff had a copy of the Bible and a copy of a "law book" in his cell, defendant Moore told plaintiff that he could have only one newspaper.[3] (Id.) According to plaintiff, the limitation on the number of publications prevents him from working on his active litigation cases and practicing his religion. (Id. at 5). Plaintiff also alleges defendants Moore and Cavanaugh enforced the policy against him as a result of racial discrimination.[4] (Id. at 8).

On August 12, 2016, plaintiff approached defendant McMullen and requested to trade two old newspapers for two new ones recently delivered to the detention center. (Am. Compl. (DE 23-1) at 1). Defendant McMullen informed plaintiff that pursuant to the publications policy he could only have one newspaper. (Id.) On August 13, 2016, defendant Crutchfield searched plaintiff's cell and confiscated "several law books" and his Bible, and in return defendants provided plaintiff one newspaper. (Id. at 2). Plaintiff had retained the subject law books and Bible in his cell for over two years, and detention center staff had never previously confiscated them. (Id.) Plaintiff also alleges defendant Marshburn "directed" his shift to harass plaintiff and take his books. (Id.) Defendant Marshburn also is allegedly a "racist" and mistreats black detainees while favoring white detainees. (Id.) Plaintiff's cell had been searched approximately eight times in the six months before filing the amended complaint, and his Bible and law books have been seized each time. (Id.)

---

[3] Defendant Moore testified plaintiff ultimately exchanged his Bible and a Georgetown Law Journal for both newspapers. (Moore Aff. (DE 47-2) ¶¶ 7-8).

[4] Plaintiff is black and it can be inferred from plaintiff's claims that defendants Moore and Cavanaugh are white.

# DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Plaintiff alleges the Onslow County Detention Center's publications policy violates his rights under the First and Fourteenth Amendments to the United States Constitution, because the policy limits his freedom of speech/expression, his access to the courts, and prevents him from exercising his religion. Plaintiff also appears to bring claims for retaliation for exercising his First Amendment rights and a Fourteenth Amendment equal protection claim.

Defendants assert they are entitled to qualified immunity to the extent plaintiff seeks

monetary damages. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court may proceed directly to the clearly established prong without first resolving whether the plaintiff has established a constitutional violation. Id.

In determining whether the right at issue was clearly established, the court must define "the right allegedly violated ... at the appropriate level of specificity." Wilson v. Layne, 526 U.S. 603, 615 (1999). This does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir.2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Id. at 362–63 (internal quotation marks omitted). The right allegedly abridged is "clearly established" for qualified immunity purposes if

> [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

As noted, plaintiff alleges the Onslow County Detention Center's content-neutral policy limiting him to possession of four publications at any one time (and only two in his cell), violates

6

his constitutional rights under the First and Fourteenth Amendments to freedom of speech/expression, access to the courts, and to freely practice his religion. Plaintiff has provided no case law, nor is the court of aware of any, clearly establishing that a content-neutral policy limiting the number of publications in a pretrial detainee's cell violates the First or Fourteenth Amendments. In fact, the majority of cases addressing this issue hold that a content-neutral policy restricting the number of publications in a prisoner's cell, implemented as here to prevent fire hazard and to address contraband issues, does not violate prisoners' constitutional rights. Leachman v. Thomas, No. 99-20209, 2000 WL 1239126, at *3 (5th Cir. Aug. 9, 2000); Neal v. Lewis, 325 F. Supp. 2d 1231, 1238 (D. Kan. 2004), aff'd, 414 F.3d 1244 (10th Cir. 2005); Boyer v. Taylor, No. 06-694-GMS, 2013 WL 1332443, at *15 (D. Del. Mar. 30, 2013); cf. Bell v. Wolfish, 441 U.S. 520, 551 (1979) (holding content-neutral policy prohibiting pretrial detainees from possessing any hardbound books, when implemented to address contraband concerns, did not violate First Amendment principles).

Additionally, with respect to plaintiff's access to the courts claim, the Fourth Circuit has expressly held that "a local facility [such as a jail or other temporary detention facility] need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility." Strickler v. Waters, 989 F.2d 1375, 1386 (4th Cir. 1993). Thus, at the time plaintiff filed the instant complaint, it was not clearly established that a policy restricting the number of publications a pretrial detainee can possess violates his right of access to the courts.

While qualified immunity does not require a case holding the exact conduct at issue is

7

unconstitutional, the right cannot be defined at such an abstract level as the "right to access the courts," the "right to free speech," or the "right to freely practice a chosen religion." Wilson, 526 U.S. at 615; see also Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (explaining precedential case law must involve "similar circumstances" in order to find the right was clearly established). Thus, in the absence of case law establishing that content-neutral restrictions on the number of publications in a prisoner's cell violates the First or Fourteenth Amendments, defendants are entitled to qualified immunity as to plaintiff's claims related to the publications policy.

Plaintiff also requests an injunction preventing prison officials from enforcing the publications policy.[5] (Compl. (DE 1-3) at 9). Plaintiff is no longer a pretrial detainee at Onslow County Detention Center. (DE 72-2). Accordingly, his claims for injunctive and declaratory relief are moot. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding prison transfer renders claims for declaratory and injunctive relief moot particularly where the prisoner is not likely to return to the original facility).

As noted, plaintiff also brings claims for violation of the Equal Protection Clause and retaliation. Plaintiff alleges that the publications policy was selectively enforced against him due to racial discrimination, and as retaliation for filing lawsuits against certain unidentified Onslow County Detention Center officers.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an

---

[5] Qualified immunity does not shield prison officials from claims for injunctive relief. Pearson, 555 U.S. at 822.

8

equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff has not made the requisite showing to establish an equal protection claim. Plaintiff has produced no competent summary judgment evidence showing the publications policy was selectively enforced against him due to racial discrimination, or that similarly-situated white inmates were treated differently. Plaintiff's only evidence supporting his equal protection claims are his conclusory assertions that certain defendants are "racist" and that they enforced the policy against him due to racial animosity. Such evidence is not sufficient to withstand summary judgment. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (holding plaintiff's "conclusory statements [alleging discrimination], without specific evidentiary support" were insufficient to withstand motion for summary judgment); Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994) (holding "vague allegations" of discrimination that are "not substantiated" by record evidence are not sufficient to create triable issue of fact).

Plaintiff's retaliation claim is also conclusory and subject to summary dismissal. A claim of retaliation is treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting that "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prison misconduct") (citation omitted). For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to

9

the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A plaintiff must allege specific facts supporting the claim of retaliation because bare assertions of retaliation do not establish a claim of constitutional dimension. Id. at 74-75. Additionally, mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory act "is simply too slender a reed on which to rest" a retaliation claim. Wagner v. Wheller, 13 F.3d 86, 90-91 (4th Cir. 1993) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

Here, plaintiff's only evidence supporting his retaliation claim is his conclusory assertion that defendants selectively enforced the publications policy as retaliation for plaintiff filing civil rights lawsuits against certain unidentified Onslow County Detention officers. Plaintiff fails to allege any specific facts supporting a claim of retaliation beyond the "mere temporal proximity" between enforcement of the policy and plaintiff's prior lawsuits. See id. There is also no record evidence establishing defendants had knowledge of plaintiff's prior lawsuits[6] before enforcing the publications policy against him. See Thompson v. Virginia, 878 F.3d 89, 110 (4th Cir. 2017) (summarily affirming grant of summary judgment on retaliation claim where plaintiff "has failed to show any facts that could support an inference that the [defendants] were aware of [plaintiff's] past litigation and grievances or that they acted with retaliatory intent").

In sum, defendants are entitled to qualified immunity on plaintiff's First and Fourteenth Amendment claims concerning the publications policy. Plaintiff also has failed to adduce evidence sufficient to create a triable issue of fact on his equal protection and retaliation claims, and plaintiff's

---

[6]Indeed, plaintiff fails to provide any specific information about the prior lawsuits, such as when specifically they were filed or the identity of the defendants.

claims for injunctive relief are moot in light of his transfer to a new prison.

## CONCLUSION

Defendants' motions for summary judgment (DE 45, 65) are GRANTED, and plaintiff's claims are DISMISSED with prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 26th day of September, 2018.

                                           LOUISE W. FLANAGAN
                                           United States District Judge